**ORIGINAL**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BRADLEY WALLACE,

    Plaintiff,

    v.

TIMOTHY MASTERSON, COOK COUNTY,
and COOK COUNTY SHERIFF,

    Defendants.

Case No. 04 C 1827

JUDGE FILIP

MAGISTRATE JUDGE DENLOW

## NOTICE OF FILING

TO:    Daniel J. Fahlgren
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602

On August 10, 2004, I filed the attached PLAINTIFF'S RESPONSE TO DEFENDANT COOK COUNTY AND THE COOK COUNTY SHERIFF'S MOTION TO DISMISS THE AMENDED COMPLAINT AT LAW with the Clerk of the United States District Court for the Northern District of Illinois at the Dirksen Building, 219 S. Dearborn, Chicago, Illinois.

### CERTIFICATE OF SERVICE

I, the undersigned, an attorney, state that I served the aforementioned documents by placing same in an envelope properly addressed, sealed and stamped, to each party to whom it is directed and placing each envelope into a U.S. Mail Box at 155 N. Michigan Ave., Suite 714, Chicago, Illinois, 60601 on Tuesday, August 10th, 2004, on or before 6:00 P.M. in a properly addressed envelope with postage pre-paid.

Patrick A. Casey

**Law Offices of Blake Horwitz**
**155 N. Michigan, #714**
**Chicago, Illinois 60601**
**(312) 616-4433**
**FAX: (312) 565-7173**

RECEIVED - ED4

04 AUG 10 PM 5: 42

CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ORIGINAL

|  |  |
|---|---|
| BRADLEY WALLACE, | |
| Plaintiff, | Case No. 04 C 1827 |
| v. | JUDGE FILIP |
| TIMOTHY MASTERSON, COOK COUNTY, and COOK COUNTY SHERIFF, | MAGISTRATE JUDGE DENLOW |
| Defendants. | |

## PLAINTIFF'S RESPONSE TO DEFENDANT COOK COUNTY AND THE COOK COUNTY SHERIFF'S MOTION TO DISMISS THE AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, BRADLEY WALLACE ("Plaintiff"), by and through his attorneys, LAW OFFICES OF BLAKE HORWITZ, and hereby responds to the motion of Defendants COOK COUNTY and the COOK COUNTY SHERIFF to dismiss Counts II, IV, V, and VI of the Amended Complaint at Law. Plaintiff states the following:

### BACKGROUND

On November 16, 2003, while a patron at a bar, Defendant Officer Timothy Masterson shoved and struck the Plaintiff, announced his office as a Cook County Sheriff's Officer, and then drew and aimed his service weapon at the Plaintiff.[1] The Plaintiff did not commit any acts of aggression towards Defendant Officer Masterson (e.g., resisting arrest, obstructing justice, battering Defendant Officer Masterson, or assaulting Defendant Officer Masterson). In short, the Plaintiff was doing nothing that would cause or provoke Defendant Officer Masterson to shove

---

[1] These facts are drawn directly from Paragraphs 4 through 10 of Plaintiff's Complaint at Law.

RECEIVED-ED4

04 AUG 10 PM 5: 43

CLERK
U.S. DISTRICT COURT



and strike the Plaintiff, to announce his office as a Cook County Sheriff's Officer, or to draw and aim his service weapon at the Plaintiff.

The Plaintiff was arrested as a result of the representations made by Defendant Officer Masterson notwithstanding the fact that the Plaintiff had not committed any act violative of the laws of the State of Illinois. Furthermore, Defendant Officer Masterson failed to witness the Plaintiff commit an illegal act of any sort.

Notwithstanding all of the above, Defendant Officer Masterson made these representations in a police report that indicated that the Plaintiff had battered him. The charge made in the police report contained not only these misrepresentations, but also false and misleading information, designed to ensure that the Plaintiff would be locked up. Further, Defendant Officer Masterson withheld information from the Cook County State's Attorney and the investigating Chicago Police Detective as to the true facts that unfolded on November 16, 2003, when Plaintiff was arrested.

A criminal trial took place because of the criminal charges that grew out of the bogus factual scenario created by Defendant Officer Masterson. To defend himself, Plaintiff was forced to hire a criminal defense attorney and became indebted to said attorney for attorneys fees in connection with the defense of the criminal litigation.

Plaintiff was found Not Guilty at trial, based mainly on the impeachment of Defendant Officer Masterson.

Defendants COOK COUNTY and COOK COUNTY SHERIFF have filed the instant motion asking this Court to dismiss Counts II, IV, V, and VI of the Amended Complaint at Law. Defendants have made this request in light of well-established precedent that amply

demonstrates that Plaintiff's claims are clearly viable. As such, Plaintiff prays that Defendants' motion, be denied.

Plaintiff shall respond to Defendants' representations, as they arise *in seriatim.*

## ARGUMENT

### A. Cook County Is Responsible For the Actions of a Sheriff's Officer

Defendants contend that Defendant COOK COUNTY and Defendant Officer Masterson have no employment relationship and, therefore, there can be no application of the doctrine of *respondeat superior* against the County.

While the case law cited by Defendants is facially very compelling, it rests exclusively upon the faulty framework and premise that a county's lack of authority over a county sheriff's employees leaves the county free and clear from responsibility under the theory of *respondeat superior.*

In *Moy v. County of Cook,* 159 Ill.2d 519, 203 Ill.Dec. 776, 640 N.E.2d 926 (1994). In *Moy,* the court addressed the issue of whether Cook County "may be held vicariously liable under the doctrine of *respondeat superior* for the alleged negligent conduct of the Cook County sheriff." *Id.* at 521, 203 Ill.Dec. 776, 640 N.E.2d at 926. The Court answered no, explaining that the sheriff is "a county officer and, as such, is not in an employment relationship with the County of Cook." *Id.* at 532, 203 Ill.Dec. 776, 640 N.E.2d at 931.

However, in *Hernandez v. County of DuPage,* 1997 WL 598132 (N.D.Ill., Sept. 19, 1997), Judge David Coar concluded that "Illinois' sheriffs are county officials and that counties are therefore liable for the actions of those sheriffs *and their departments. Id* at *8 (emphasis added). Judge Coar explained his reasoning, as follows:

> "Illinois law is clear that sheriffs are county officers. ILL. CONST. art. VII,
> § 4 [FN5]; *Moy,* 159 Ill.2d at 527, 203 Ill.Dec. 776, 640 N.E.2d at 929. The
> county board recommends an annual budget to the sheriff, and it appropriates

and provides funds for the operation of the sheriff's department and county jail. 55 ILCS 5/3-15014, 15015. The number of deputies that a county sheriff can appoint may not exceed the number set by the county board. 55 ILCS 5/3-6008. While the powers and duties of sheriffs are defined by state law, they are also defined by county ordinance and may be altered by ordinance. ILL. CONST. art. VII, § 4(d). Thus, even though a county board has no power to alter a sheriff's duties with respect to his management of the county jail, *see Moy,* 159 Ill.2d at 527, 203 Ill.Dec. 776, 640 N.E.2d at 929, it is clear that county boards may exercise control over the sheriff in other areas. *See* 55 ILCS 5/5-1087 ("A county board may alter any other duties, powers or functions or impose additional duties, powers and functions upon county officers [such as sheriffs].")."

*Id* at *8.

Defendants continue to attempt to downplay the importance of both *Carver v. Sheriff of LaSalle County,* 203 Ill.2d 497, 787 N.E.2d 127 (2003) and *Carver v. Sheriff of LaSalle County, Illinois,* 324 F.3d 947 (7th Cir., 2003), particularly the Seventh Circuit's holding in the latter decision.

First, it is important to state that *Carver* initially came before the Illinois Supreme Court on a question of Illinois law certified by the Seventh Circuit: Whether, and if so when, Illinois law requires counties to pay judgments entered against a sheriff's office in an official capacity. In so answering, the Illinois Supreme Court took great pains to examine and to explain the relationship between a county sheriff and the county that he serves.

Plaintiff grants Defendants' contention that a sheriff is not a county employee, but rather is an independently elected county officer for a four-year term. Ill.Const. 1970, art. VII, sect. 4(c). However, to state as Defendants do that "…although the sheriffs were county officers, they [are] not employees of Cook County and thus the theory of *respondeat superior* [does] not apply" (Def. Motion at p. 3) is being quite disingenuous, to say the least.

In *Carver,* the Illinois Supreme Court writes that "(t)he sheriff's office is financed by public funds appropriated to that office by the county. For example, Section 4-6003 of the

Counties Code provides that in counties of less than 2 million the county board 'shall fix the compensation of sheriffs, with the amount of their necessary clerk hire, stationery, fuel, and other expenses.'" *Carver*, 203 Ill.2d at 513-4, 787 N.E.2d at 137. Therefore, "a county sheriff is an independently elected county official, who performs functions that are essential to the operation of government, and whose office is funded by public funds." *Id* at 514-5.

It is a statutory fact that a county sheriff has the power and authority to appoint and to hire deputies. 55 ILCS 5/3-6008 (West 2000). When a sheriff hires a deputy, it is no different than when any employer hires an employee: an employment situation is created at the moment of hire.

It therefore logically follows, given that the sheriff's office is "funded by public funds" and that the sheriff's compensation and expenses are fixed by the county board, that Defendant COOK COUNTY would be considered the principal of both the Sheriff and his Deputies. This is exactly the conclusion which Judge Coar reached in *Hernandez v. County of DuPage*, 1997 WL 598132 (N.D.Ill., Sept. 19, 1997).

In the instant case, Defendant COOK COUNTY SHERIFF is being sued in his official capacity, not in an individual capacity. "(B)ecause a county sheriff falls within the term 'other local governmental bodies' contained in section 1-206, the sheriff is therefore a 'local public entity' for purposes of the Tort Immunity Act." *Carver v. Sheriff of LaSalle County*, 203 Ill.2d 497, 512, 787 N.E.2d 127, 136 (2003). Hence, Defendant COOK COUNTY SHERIFF as a local public entity would be liable should Plaintiff win on his claims. Section 9-102 states that a local public entity is to pay "any tort judgment...for compensatory damages for which it is liable." 745 ILCS 10/9-102 (West 2000). Based upon that portion of the statute, the Illinois Supreme Court concluded "that this provision authorizes the sheriff (as the local public entity) to pay any

judgment or settlement for compensatory damages for which the office of the sheriff is liable." *Carver*, 203 Ill.2d at 515, 787 N.E.2d at 138.

This then leaves the question as to how the sheriff would pay such a judgment (or settlement) in that he lacks the authority to levy taxes and is, in fact, funded solely by public funds. The Illinois Supreme Court held that "the county is obligated to provide funds to the county sheriff to pay official capacity judgments entered against the sheriff's office." *Carver*, 203 Ill.2d at 516, 787 N.E.2d at 138.

Based upon the exhaustive analyses and holdings of the Illinois Supreme Court in *Carver*, the Seventh Circuit subsequently held "that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity. Because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver v. Sheriff of LaSalle County, Illinois*, 324 F.3d 947, 948 (7th Cir., 2003).

Were Defendants to contend that the Seventh Circuit in *Carver* did not say that a county is a necessary party in a suit against a rank and file employee of an elected official, such serves only to posit the fantastic and unique argument that state law requires the county to pay in any suit seeking damages from a county officer, but does not require the county to do so in any suit seeking damages from an appointed or a hired employee (such as a correctional officer), acting within the scope of his employment, of a county officer.

Therefore, based upon the above reasons, Plaintiff prays that this Court deny Defendants' motion relative to dismissing Defendant COOK COUNTY from the Complaint at Law.

### B. The Cook County Sheriff is Liable for the Intentional Acts of his Employees

Defendants contend that Defendant COOK COUNTY SHERIFF cannot be held vicariously liable for Defendant Officer Masterson's acts unless Masterson acted negligently. To support this contention, Defendants cite two Northern District cases [*Chaney v. City of Chicago*, 901 F.Supp. 266 (N.D.Ill. 1995); *Harris v. Sheahan*, 1998 WL 831822 (N.D.Ill. Nov. 25, 1998)] which interpret an Illinois statute (55 ILCS 5/3-6016) as limiting an Illinois sheriff's *respondeat superior* liability to acts of his employees alleged to be negligent, not intentional or willful and wanton acts.

These two decisions have since been called into question by the Illinois Appellate Court's holding in *Brown v. King*, 767 N.E.2d 357, 328 Ill.App.3d 717 (Ill.App. 1 Dist., 2001), appeal denied, 201 Ill.2d 561, 786 N.E.2d 181 (Ill. Oct 02, 2002). In *Brown*, an off-duty sheriff's deputy shot a motorist in the leg who had run from him. The plaintiff/motorist then sued the county sheriff for willful and wanton misconduct and for negligence. Count II of the plaintiff's amended complaint alleged willful and wanton misconduct. The trial court granted the sheriff's motion to dismiss Count II. The Illinois Appellate Court reversed.

In its holding, the Court wrote that:

> "Count II of the instant case is not premised on section 3-6016 at all. Rather, liability is premised on section 9-102 of the Tort Immunity Act and on the doctrine of *respondeat superior*. Further, section 3-6016 does not contain any language actually indicating that the Sheriff is completely immune from liability for the intentional and wanton acts of his employees. Rather, it is silent regarding such liability. We believe that reading the statute's silence as precluding all liability for intentional or reckless acts is an unwarranted interpretation. See *Gabriel Builders, Inc. v. Westchester Condominium Ass'n*, 268 Ill.App.3d 1065, 1069, 206 Ill.Dec. 448, 645 N.E.2d 453 (1994) (noting that when the legislature is silent, a court may not fill a void through judicial interpretation). Finally, while [*J.P. Miller Artesian Well Co. v. County of Cook*, 39 Ill.App.3d 1020, 352 N.E.2d 372 (1976) and *Chaney v. City of Chicago*, 901 F.Supp. 266 (N.D.Ill. 1995)] may be correct in saying liability for the intentional and wanton acts of

sheriff's employees may not be premised on section 3-6016, we believe that is as far as those holdings go. Those cases were concerned only with liability based on section 3-6016 and did not say sheriffs were completely immune from *respondeat superior* liability for the intentional and wanton acts of sheriff's employees acting in the scope of their employment.

"However, the Sheriff cites to federal district court decisions that appear to support his position. In *Harris v. Sheahan,* 1998 WL 831822 (N.D.Ill. Nov. 24, 1998), the court held that section 3-6016 'specifically addresses the liability of a county sheriff for the intentional or wanton misconduct of deputy sheriffs' and had been interpreted in *Chaney* and *Miller Artesian* as prohibiting sheriff liability for a deputy's intentional or wanton misconduct. Thus, the *Harris* court held, section 3-6016 even acted to defeat the plaintiff's common law *respondeat superior* claim. In *Cortez v. Defendant Deputy Sheriffs, Names Unknown,* 1999 WL 569542 (N.D.Ill. July 26, 1999), the court also dismissed a plaintiff's *respondeat superior* claim against the sheriff on the basis that it alleged intentional conduct and was thus barred by section 3-6016. Initially, we note that neither *Harris* nor *Cortez* is binding on this court. Further, we disagree with the holdings therein. Both cases rely on *Chaney* and *Miller Artesian.* As stated above, we believe those cases stand for nothing more than that liability for the Sheriff for the intentional and wanton acts of his employees may not be premised on section 3-6016. We disagree with the use of *Chaney* and *Miller Artesian* in *Harris* and *Cortez* as a springboard to finding that section 3-6016, through its silence on the subject, defeats common law claims of *respondeat superior* regarding intentional conduct. Section 3-6016 does not act to bar the instant action or require its dismissal as a matter of law."

*Id* at 363-4.

To follow Defendants' argument on this issue to its logical conclusion, every incident involving a sheriff's deputy would necessarily entail an intentional act, in large part because deputies are trained to act or react to situations which many times require the application of a reasonable amount of force. This is a deputy's job. When such incidents veer into police misconduct, a sheriff in the State of Illinois need only hide behind an interpretation of Section 3-6016 that, since the act or acts of his or her deputy were intentional, the sheriff is immediately

off the hook for any liability, leaving the deputy on the hook to twist in the wind. It is therefore evident why the Illinois Appellate Court wrote in *Brown* that "reading the statute's silence as precluding all liability for intentional or reckless acts is an unwarranted interpretation." *Id* at 363.

Judge Gottschall noted this disconnect between the Northern District decisions in *Chaney* and *Harris* and the Illinois Appellate Court's holding in *Brown* when she wrote in *Lewis v. Cook County Corrections Officers, et al.*, 2002 WL 31133175 (N.D.Ill. July 19, 2002) that "[Cook County Sheriff] Sheahan's argument against liability takes the following form… (2) a sheriff cannot be held vicariously liable under Illinois law for the intentional acts of his employees… Courts disagree as to the validity of the second premise. *Compare Brown v. King,* 328 Ill.App.3d 717, 262 Ill.Dec. 897, 767 N.E.2d 357, 360 (Ill.App.Ct.2001) (sheriff may be liable for intentional acts of employees under traditional notions of *respondeat superior* ), *with Harris v. Sheahan,* No. 98 C 1271, 1998 U.S. Dist. LEXIS 18720, at *4 (N.D.Ill. Nov. 24, 1998) (such liability is "specifically" barred by 55 ILCS 5/3-6016). Thankfully, it is not necessary to resolve that conflict to decide this motion." *Lewis* at *3.

It is instructive, however, to note that the Seventh Circuit wrote in *RAR, Incorporated v. Turner Diesel, Limited,* 107 F.3d 1272, 65 USLW 2589 (7th Cir. 1997) that "(a)lthough state court precedent is binding upon us regarding issues of state law, it is only persuasive authority on matters of federal law." *Id* at 1276. Defendants' argument on this issue is, at its heart, an issue of state law.

Further, we direct this Honorable Court's attention to the fact that, in the case at bar, the Plaintiff has premised liability within his Complaint (Claim VI) on 745 ILCS 10/9-102, the Tort Immunity Act, and by extension the doctrine of *respondeat superior.*

Finally, despite the great lengths that Defendants go to in their argument to establish that Plaintiff's allegations assert intentional conduct on the part of Defendant Officer Masterson, nowhere in the Complaint does Plaintiff state that Masterson's conduct was intentional or willful and wanton. In *McCottrey v. Griffin*, 2002 WL 483414 (N.D.Ill. March 29, 2002), an inmate alleged a beating at the hands of a correctional officer and filed suit against the correctional officer and the Cook County Sheriff for excessive force. The Sheriff filed a Motion to Dismiss Count III of the complaint on the grounds that the correctional officer's actions were intentional and that therefore the Sheriff was not liable.

The Court denied the motion, writing that "(t)he instant case is distinguishable from cases cited by the defendant that have found that allegations of intentional conduct of deputies do not make the Sheriff liable under 55 ILCS 5/3-6016. *Chaney v. City of Chicago*, 901 F Supp. 266, 268 (N.D.Ill.1995); *Harris*, 1998 U.S. Dist. WL 831822, at * 2. In these cases, the plaintiffs alleged intentional and wanton conduct in the count brought against the sheriff. Count III of McCottrey's complaint contains no such allegation; and, therefore, neither of these cases are controlling." *Id* at *2.

The Court further wrote that "(p)laintiff need not prove a case of negligence at this stage of the litigation. All that need be established is that the complaint pleads a sufficient cause of action." *Id* at *2.

It may yet be inferred that Defendant Officer Masterson failed to use due care when he announced his office and drew and aimed his service weapon in the bar at the Plaintiff. If so, Defendants' argument at this point may be entirely moot. These facts can only be ascertained through the processes of discovery.

Therefore, based upon the above reasons, Plaintiff prays that this Court deny Defendants' motion relative to dismissing Counts VI and VII.

### C. Plaintiff Does Allege a Valid Claim for Malicious Prosecution

Defendants further contend that Plaintiff's Illinois tort claim of malicious prosecution (Count II) should be dismissed for failure to allege the elements required to state a cause of action. Defendants cite two Illinois Supreme Court cases and discuss at length the elements necessary to state a cause of action for malicious prosecution in Illinois state courts. Defendants, however, appear to have overlooked that this complaint has been filed in Federal District Court. As such, it must only satisfy the requirements of notice pleading, not fact pleading as required in Illinois state courts.

In a fairly recent case before the District Court for the Northern District of Illinois, two of the defendants moved to dismiss a state cause of action for malicious prosecution against an insurance company that had alleged that a policyholder had committed arson "on the grounds that it fails to sufficiently allege the elements of malicious prosecution. *Woodard v. American Family Mutual Insurance Company*, 950 F.Supp. 1382, 1386 (N.D.Ill. 1997).

The Court denied the defendants' motion, writing: "Under federal notice pleading standards, mere conclusions are usually sufficient as long as they provide minimal notice of the claims being asserted. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993); *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir.1995). Accepting the allegations of the complaint to be true, as the court must, the court cannot accept Southeastern and Henderson's contention that Count I fails to allege sufficient involvement in the prosecution. This element is alleged, and the mere fact that it is not supported with detailed factual allegations is not a basis for dismissal." *Id* at

1386-7.

So too in the instant case, the Plaintiff has pleaded enough facts to provide Defendants with the minimal notice required by notice pleading in Federal court and has pleaded sufficient facts to allege the involvement of Defendant Officer Masterson in the malicious prosecution of the Plaintiff.

Therefore, based upon the above reasons, Plaintiff prays that this Court deny Defendants' motion relative to dismissing Count II.

### D. Count VI Does State a Valid Official Capacity ("Monell") Claim against the County of Cook

#### 1. The County of Cook IS Liable, Moy and Thompson Notwithstanding

Here, Defendants choose to again belabor the same argument that Defendant County of Cook is not liable under *Moy* and *Thompson*, but this time wrap their argument around Count VI, which is the *Monell* claim in the amended complaint. Plaintiff will not again force this Honorable Court to read the Illinois Supreme Court's reasoning and the Seventh Circuit's reasoning in their respective *Carver* holdings, save to repeat "that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity. Because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver v. Sheriff of LaSalle County, Illinois*, 324 F.3d 947, 948 (7th Cir., 2003).

Therefore, based upon the above reason, Plaintiff prays that this Court deny Defendants' motion relative to dismissing Count VI.

#### 2. The Policies Alleged by Plaintiff in Count VI Do Apply to the Facts Alleged by Plaintiff

Defendants seek to dismiss Count VI (*Monell* claim) by arguing that Plaintiff has alleged in the facts of the amended complaint that Defendant Officer Masterson was on-duty at the time of the incident, while alleging that Defendant County of Cook is liable for constitutional violations that were caused by policies of the County of Cook relating to off-duty misconduct.

The Northern District has consistent held that such apparent inconsistency is permitted under the concept of alternative pleading. Most recently, in *Guarantee Trust Life Ins. Co. v. American United Life Ins. Co.,* 2003 WL 23518661 (N.D.Ill., Dec. 17, 2003), the Court wrote that "(u)nder Federal Rule of Civil Procedure 8(e)(2), parties can plead alternative theories of recovery and damages, inconsistent with one another. However, Rule 11 regulates this liberal pleading policy to prevent a party from pleading facts it knows to be false. Accordingly, a "pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *Id* at *1 (internal citation omitted). Further, the Seventh Circuit has written that "(t)here is generally nothing wrong with alternative pleading..." *Mizuho Corp. Bank (USA) v. Cory & Associates, Inc.,* 341 F.3d 644 (7th Cir. 2003).

In the instant case, there exists legitimate doubt as to the role of Defendant Officer Masterson on November 16, 2003. The facts seem to indicate that, while he was a patron inside the bar, he was off-duty. However, once he announced his office and drew and aimed his service weapon at Plaintiff, did he then in fact move his status to that of an on-duty Cook County Sheriff's officer? Did he portray himself as being an on-duty Cook County Sheriff's officer when he spoke to the investigating Chicago Police officers and detective? However this issue of fact and law is resolved, it seems apparent that Defendant Officer Masterson announcing his office and drawing and aiming his service weapon in a crowded drinking establishment where there is no claimed evidence that anyone else had a weapon or that his life or well-being were in

jeopardy was done with the belief that he would neither be investigated nor disciplined by the Sheriff and that, in any event, no remedial action by the Sheriff would be forthcoming.

Defendants have argued long and hard that the Sheriff is not responsible for the intentional acts of his officers. In so doing however, Defendants have, by their silence, shown a lack of clarity as to whether Defendant Officer Masterson was off-duty or, in taking the actions which he did, had moved himself to being on-duty.

The alternative pleading in which Plaintiff has engaged in his amended complaint is both necessary and proper due both to the facts of the case at bar and the weight of case law in the Northern District. Consequently, based upon these reasons, Plaintiff prays that this Court deny Defendants' motion relative to dismissing Count VI.

### 3. Count VI States a Monell Official Capacity Claim

Defendants argue that Plaintiff has not alleged enough facts to establish that Plaintiff suffered injuries of a constitutional magnitude as the result of an official custom, policy, or practice. To bolster this argument, Defendants rely on one line from *McCormick v. City of Chicago*, et al, 230 F.3d 319, 325, (7th Cir. 2000) which they quote as saying that "an official capacity claim must at a minimum include allegations in conclusory language that a policy existed, buttressed by facts alleging wrongdoing by the governmental entity." (Def.'s Motion at p. 11).

Plaintiff can only assume that Defendants ceased reading *McCormick* at that line. That is the only explanation which occurs to Plaintiff given that in McCormick, the Seventh Circuit holds, in light of the United States Supreme Court decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), as follows:

"Plaintiffs' counsel, the defense bar, and district courts continue to struggle with this and other courts' pronouncements as to exactly what a plaintiff bringing a municipal liability suit must plead to survive a motion to dismiss-- and with reason. In *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir.1995), we held that a plaintiff 'need not plead facts; he can plead conclusions.' This of course suggests a clear rule in favor of notice pleading. Such a rule comports with *Leatherman*, 507 U.S. at 164, 113 S.Ct. 1160, but may appear confusing in light of our holdings in other cases like *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir.1998). In *Kyle*, we considered the language and the facts provided in the plaintiff's complaint and concluded that the plaintiff could not state a claim by simply attaching a 'bare conclusion to the facts he narrates.' *Id.* (internal citation omitted). Here, there is no question that McCormick has included in his complaint a number of conclusions designed to get him over the pleading bar for his municipal liability claim. The smattering of phrases like 'highest policymaking officers' and 'widespread custom' throughout McCormick's complaint is a common practice designed to ensure that the complaint will withstand scrutiny under liberal notice pleading. Some would assert that the inclusion of this language should be 'enough.' Others suggest that more is needed; that the facts included in the complaint must lead to the legal conclusions drawn. We believe that it is the former view, and not the latter, that *Leatherman* and its progeny support. In *Leatherman*, the Supreme Court reminded us that the Federal Rules of Civil Procedure, as currently formulated, do not permit the courts to dismiss § 1983 municipal liability claims for lack of factual specificity under Rule 12(b)(6): '[F]ederal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.' *Leatherman*, 507 U.S. at 168-69, 113 S.Ct. 1160."

*Id* at 324-5.

Further, the Northern District, in *Frieri v. City of Chicago*, 127 F.Supp.2d 992 (N.D.Ill.,2001), has clarified the McCormick decision, writing that: "(t)he Supreme Court has expressly rejected a heightened pleading standard for § 1983 claims against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The Seventh Circuit recently reaffirmed its understanding of *Leatherman,* holding that such 'boilerplate' allegations are sufficient. *McCormick v. City of Chicago,* 230 F.3d 319, 324-25 (7th Cir.2000)."

Therefore, Plaintiff again prays that this Court deny Defendants' motion relative to dismissing Count VI.

## CONCLUSION

Therefore, based upon the above reasons, Plaintiff prays that this Court deny Defendants'

motion relative to dismissing Counts II, IV, V, and VI of the Amended Complaint at Law.


Respectfully Submitted.


One of the Attorneys for the Plaintiff
Patrick A. Casey


**LAW OFFICES OF BLAKE HORWITZ, LTD.**
**Blake Horwitz, Esq.**
**Patrick A. Casey, Esq.**
**Amanda S. Yarusso, Esq.**
**155 North Michigan, #714**
**Chicago, IL 60601**
**312-616-4433**
**312-565-7173 (Facsimile)**